NUMBER 13-01-620-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________


ALLIED CAPITAL CORPORATION , Appellant,


v.


JEAN T. CRAVENS, GAMBLE J. PALMER 

AND MARTHA PALMER , Appellees.

___________________________________________________________________


On appeal from the 206th District Court

of Hidalgo County, Texas.

__________________________________________________________________


O P I N I O N


Before Chief Justice Valdez and Justices Hinojosa and Rodriguez

Opinion by Justice Rodriguez


This is an accelerated, interlocutory appeal from a temporary injunction enjoining appellant, Allied Capital Corporation
(Allied), from advertising in connection with a foreclosure sale of certain property owned by appellees, Gamble J. (G.J.)
Palmer and Martha Palmer (the Palmers) and Jean T. Cravens (Cravens). We reverse and remand.

Background

In 1995 and 1996, the Palmers executed two promissory notes (collectively referred to as the indebtedness) payable to
Allied. Note No. 1 was in the original principal amount of $1,100,000.00 and Note No. 2 was in the original principal
amount of $100,000.00. To secure the indebtedness, appellees executed deeds of trust and security agreements in the
following property:

Lots five (5) and six(6) RIDGEVIEW PLACE UNIT NO. ONE an Addition to the City of McAllen, Hidalgo County, Texas
(D & E Building); and

A 1.22 Acre Tract of Land out of certain 20.67 acre tract out of lot 4, Block 6 A.J. McColl Subdivision, or portion 68 of
Hidalgo County, Texas (Pad Parcel No. 7). (1)

On July 1, 2000, the notes matured according to their terms, with a balance of approximately $1,093,000.00 remaining on
Note 1, and approximately $36,000.00 on Note 2. At maturity, the Palmers were late in their note payments and rent
assignments. Allied declared default and posted the properties securing Notes 1 and 2, the D & E Building and Pad Parcel
No. 7, for foreclosure on August 1, 2000. Allied employed the services of Fox & Associates, Partners, Inc. (Fox) (2) to
advertise the foreclosure sale of the two properties.

The Palmers filed an action and obtained a temporary restraining order preventing advertising of the August foreclosure
sale, and the sale itself. Subsequently, the Palmers and Allied entered into a rule 11 agreement. (3) Allied agreed to post the
foreclosure for a later date, October 3, 2000, contingent upon the Palmers making a $245,000.00 payment by September 15,
2000. (4) When the Palmers did not satisfy their obligation to pay this amount under the agreement, Allied again posted the
property for foreclosure sale. (5) The record reveals that Fox distributed faxes of flyers regarding the rescheduling of the
foreclosure sale as early as September 8, 2000. Information disseminated included a description of the properties and
notices of the substitute trustee's sales. Advertisements regarding the sale were also placed in the newspaper.

On October 2, 2000, one day before the rescheduled foreclosure sale, Cravens, declaring an ownership interest in Pad
Parcel No. 7, filed the present suit seeking, in part, a temporary injunction enjoining Allied from advertising the foreclosure
sale of the properties. In her petition, Cravens claimed Allied's actions in publicly advertising the property for public sale
amounted to tortious interference with prospective contracts. She alleged injury by virtue of the manner in which Allied
advertised the foreclosure. Cravens asserted the advertising tortiously interfered with negotiations that would allow the
Palmers to cure the default on the notes. More specifically, Cravens alleged Allied interfered with talks between McAllen
Primary Care, P.A., regarding a three year lease extension and/or the potential purchase of the property. Cravens also
contended that John Sun was in negotiations to purchase Pad Parcel No. 7 and those negotiations were suspended because
of the actions of Allied. The Palmers intervened in the underlying lawsuit on October 12, 2000. 

A hearing was held on appellees' request for a temporary injunction on October 31, 2000. Drawing all legitimate inferences
in a manner most favorable to the trial court's judgment, see Rugen v. Interactive Bus. Sys., Inc., 864 S.W.2d 548, 551 (Tex.
App.-Dallas 1993, no writ), the evidence at the hearing reveals that Fox sent advertisements directly to De Saussure
McFaddin Trevino of McAllen Primary Care, P.A., a former and prospective lessee of a portion of the D & E Building. 
There was testimony that, as a result of Allied's advertising, Trevino was deterred from continuing her interest in re-leasing
the property. There was also testimony that John Sun, a potential buyer, may have received the advertisements. In
addition, Robert Kelly, an officer of Allied, acknowledged that, from plaintiff's petition, he would imply notice that Allied's
advertising was interfering with appellees' ability to negotiate a sale of the pad site and to renegotiate refinancing.

Almost nine months after the hearing, the trial court granted appellees' request for a temporary injunction and ordered
Allied to "desist and refrain from posting, selling, foreclosing, auctioning, and advertising for the sale" of the D & E
Building or Parcel Pad No. 7. Allied appeals from this order.

Temporary Injunction

To be entitled to a temporary injunction a plaintiff must show: (1) a viable cause of action against the defendant; (2) a
probable right to recovery; and (3) a probable, imminent, and irreparable injury in the interim. Walling v. Metcalfe, 863
S.W.2d 56, 57 (Tex. 1993). The standard of review for granting or denying a temporary injunction is abuse of discretion. 
Id. at 58; Matagorda County Hosp. Dist. v. City of Palacios, 47 S.W.3d 96, 99 (Tex. App.-Corpus Christi 2001, no pet.). 
The appellate court must not substitute its judgment for that of the trial court and determine the trial court abused its
discretion by granting injunctive relief unless the trial court's action was so arbitrary it exceeded the bounds of reasonable
discretion. Davis v. Huey, 571 S.W.2d 859, 861-62 (Tex. 1978); Rugen, 864 S.W.2d at 551. Moreover, the appellate court
should draw all legitimate inferences from the evidence in a manner most favorable to the trial court's judgment. Rugen,
864 S.W.2d at 551. However, abuse of discretion can be shown when the court misapplies the law to established facts or
when it concludes that the applicant has a probable right of recovery and the conclusion is not reasonably supported by
evidence. See id. at 550-51. The burden of proof is on the litigants attacking the trial court's action. Garcia-Marroquin v.
Nueces County Bail Bond Bd., 1 S.W.3d 366, 379 (Tex. App.-Corpus Christi 1999, no pet.); GXG Inc. v. Texacal Oil &
Gas, Inc., 882 S.W.2d 850, 851 (Tex. App.-Corpus Christi 1994, no writ). Thus, Allied has the burden of proving that the
trial court abused its discretion when it granted this temporary injunction. See Garcia-Marroquin, 1 S.W.3d at 379.

Issue

By one issue, Allied contends the trial court erred in granting the injunction because appellees failed to show that they
would probably prevail at trial. Allied contends appellees' tortious interference with prospective contracts claim is not a
viable cause of action because advertising a foreclosure sale is not an independent tortious act or a violation of law.

Tortious Interference with Prospective Contract or Business Relations

To prevail on a claim of tortious interference with prospective business relations this Court has required a plaintiff to
establish:

(1) a reasonable probability the plaintiff would have entered a contractual relationship with a third-party; 

(2) an intentional and malicious act that intervened with the formation of that relationship;

(3) the defendants lacked privilege or justification to interfere; and 

(4) actual damage, loss, or harm resulted from the defendant's interference.

Garner v. Corpus Christi Nat'l Bank, 944 S.W.2d 469, 477 (Tex. App.-Corpus Christi 1997, writ denied). Without
specifically enumerating each of the elements of this cause of action, the Texas Supreme Court recently analyzed and
modified the second and third elements identified above.

In Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d 711, 726 (Tex. 2001), the Texas Supreme Court held:

to recover for tortious interference with a prospective business relation a plaintiff must prove that the defendant's conduct
was independently tortious or wrongful. By independently tortious we do not mean that the plaintiff must be able to prove
an independent tort. Rather, we mean only that the plaintiff must prove that the defendant's conduct would be actionable
under a recognized tort. . . . [A] plaintiff could recover for tortious interference by showing an illegal boycott, although a
plaintiff could not recover against a defendant whose persuasion of others not to deal with the plaintiff was lawful. (6) 
Conduct that is merely "sharp" or unfair is not actionable and cannot be the basis for an action for tortious interference with
prospective relations, and we disapprove of cases that suggest the contrary.

Id. Finding no underlying tortious or unlawful activity, the court held in favor of Wal-Mart. Id. at 728.

Furthermore, in Bradford v. Vento, 48 S.W.3d 749, 757 (Tex. 2001), as to the intentional component of this cause of action,
the supreme court stated that interference is intentional "if the actor desires to bring it about or if he knows that the
interference is certain or substantially certain to occur as a result." Id. (quoting Restatement (Second) of Torts § 7668 cmt.
d (1979)). However, the Restatement further provides that "if [the actor] had no desire to effectuate the interference by his
action but knew that it would be a mere incidental result of conduct he was engaging in for another purpose, the
interference may be found to be not improper." Id.

The Sturges Court also addressed the concepts of justification and privilege, concluding they are defenses in a claim for
tortious interference with prospective business relations only to the extent they are defenses to the independent tortiousness
of the defendant's conduct. Id. at 727.

In light of Sturges and Bradford, the elements of a claim for tortious interference with prospective business relationship
may now be restated as:

 


 a reasonable probability that the parties would have entered into a contractual relationship;


 


 an "independently tortious or unlawful" act by the defendant that prevented the relationship from occurring;


 


 the defendant did such act with a conscious desire to prevent the relationship from occurring or knew that the
interference was certain or substantially certain to occur as a result of his conduct; and


 


 the plaintiff suffered actual harm or damage as a result of the defendant's interference.


Baty v. Protech Ins. Agency, No. 14-99-00201-CV, 2001 Tex. App. LEXIS 8012, at *45-46 (Tex. App.-Houston [14th
Dist.] Nov. 29, 2001, no pet.) (citing Ash v. Hack Branch Distrib. Co., 54 S.W.3d 401, 414-15 (Tex. App.-Waco 2001, pet.
denied)).

Analysis

In order to establish their tortious interference with contract claim, appellees must prove an underlying tortious or illegal
act. See Baty, 2001 Tex. App. LEXIS 8012, at *45-46. Appellees do not argue that Allied's actions were illegal. They do
not plead or urge that Allied's actions constitute an independent tort such as fraud, an assault, or an illegal boycott. See
Sturgis, 62 S.W.3d at 727. Appellees do, however, assert that Allied's advertising of the foreclosure sale of the properties
was an independent tort because its actions went beyond that required by statute or the deeds of trust. However, appellees
have provided us with no authority, and we have found none, to support this contention.

Section 51.002 of the Texas Property Code provides that "[a] sale of real property under a power of sale conferred by a
deed of trust . . . must be a public sale at auction . . . at the county courthouse. . . ." Tex. Prop. Code Ann. § 51.002(a)
(Vernon 1995). Written notice must be given at least twenty-one days in advance and must be (1) posted at the courthouse
door in each county in which the property is located, (2) filed in the office of the county clerk of each county in which the
property is located, and (3) sent by the holder of the debt via certified mail to each debtor obligated to pay the debt. Id. at §
51.003 (b) (1)-(3). The relevant portions of the deeds of trust in this case provide that any foreclosure sale and notice
thereof "shall be made . . . in accordance with the then applicable provisions of [s]ection 51.002 of the Texas Property
Code. . . ." Appellees do not complain that Allied did not comply with the statutory notice requirements. Moreover, Mark
Freeland, appellees' legal expert in the area of real estate law, testified at the temporary injunction hearing that the language
of the property code and the deeds of trust in this case set forth the minimum, not the maximum, requirements to conduct a
foreclosure sale. Freeland also acknowledged there is nothing in the statute or the deeds of trust that says one can or cannot
advertise a foreclosure sale beyond the required statutory notice. Freeland, however, disagreed with Allied's method of
advertising, concluding that, under the circumstances of this case, it was improper for Allied to advertise the property for
sale before the foreclosure sale was posted.

Nonetheless, we cannot conclude that Allied's conduct in advertising the foreclosure sale of the property beyond the
required statutory notice is actionable as an independent tort. Allied's conduct may appear "sharp" or unfair because it
provided foreclosure information to those who had shown an interest in leasing or buying the properties at issue, but we
cannot conclude that it is tortious behavior. See Sturgis, 62 S.W.3d at 726. As the Texas Supreme Court has provided,
appellees cannot recover against one whose persuasion of others not to deal with them is lawful. See id. at 727. We
conclude, therefore, that advertising a public sale to the public beyond the minimum requirements set out by statute or in
the deed of trust is not, under the facts before us in this appeal, independently wrongful or tortious, and cannot be the basis
of a claim for tortious interference with a contract.

Appellees also argue that the underlying tortious act supporting their claim is one of wrongful foreclosure. They rely on
First State Bank v. Keilman, 851 S.W.2d 914, 921-22 (Tex. App.-Austin 1993, writ denied), and other wrongful foreclosure
cases (7) to support their contention that Allied failed to strictly comply with notice requirements, and, thus, deterred
third-party bidding. However, one of the elements of wrongful foreclosure is an irregularity in the sale. See Charter Nat'l
Bank-Houston v. Stevens, 781 S.W.2d 368, 371 (Tex. App.-Houston [14th Dist.] 1989, writ denied). Because there has
been no foreclosure in this case, appellees' argument and their reliance on First State Bank and other cases involving
wrongful foreclosure is misplaced.

Additionally, appellees contend that the underlying tort that forms the basis of their claim is business disparagement. 
Appellees pleaded that Allied interfered with their contractual relations with Trevino and Sun by advertising the foreclosure
of the property to them while they were in negotiations with appellees to either lease or purchase the property at issue. 
Given a liberal construction of their pleadings, we could conclude appellees' pleadings allege that Allied interfered by
conduct constituting business disparagement, a means of interference which is tortious in itself. See Prudential Ins. Co. of
Am. v. Fin. Review Servs., Inc., 29 S.W.3d 74, 81 (Tex. 2000) (absent special exceptions, court construes petition liberally
in favor of pleader). The general elements of a claim for business disparagement are publication by the defendant of the
disparaging words, falsity, malice, lack of privilege, and special damages. See id. However, even construing the pleading
liberally, we cannot affirm on this basis because appellees did not present this argument or evidence supporting this
argument during the temporary injunction proceedings. We review only the record as it appeared before the trial court at
the time the injunction was issued. Univ. of Tex. v. Morris, 162 Tex. 60, 64, 344 S.W.2d 426, 429 (Tex. 1961). Any
arguments, evidence, or causes of action presented to the trial court subsequent to the granting of the temporary injunction
are not properly before this Court. Id.

Finally, appellees contend that the underlying tortious act for their claim was a breach of contract. The basis for this
contention is that Allied's advertisement of the foreclosure sale of the properties breached the provisions of the deeds of
trust. We have already resolved this argument against appellees, thus, this contention also fails. Furthermore, breach of
contract was not pleaded, nor was this argument made before the trial court prior to the temporary injunction being granted. 
Therefore, it is not properly before us in this appeal. See id.

Accordingly, appellees are unable to demonstrate a probable right of recovery, one of the elements necessary for a
temporary injunction. See Walling, 863 S.W.2d at 57. Based on the record before us, we conclude appellees cannot state a
viable cause of action for tortious interference because they have not established independently tortious or unlawful
conduct on the part of Allied, and injunctive relief should not issue. The trial court abused its discretion by granting the
temporary injunction.

We sustain Allied's sole issue, reverse the order granting temporary injunctive relief thereby dissolving the temporary
injunction, and remand the cause to the trial court for further proceedings. 

NELDA V. RODRIGUEZ

Justice



Publish .

Tex. R. App. P. 47.3.



Opinion delivered and filed

this 24th day of January, 2002.

 

1. It is undisputed that the D & E Building is owned by the Palmers and Pad Parcel No. 7 is owned by G.J. Palmer and
Cravens.

2. Fox is a defendant/third-party plaintiff in this lawsuit, and was appointed substitute trustee in the deeds of trust. Fox is
not, however, an appellant in this appeal.

3. The Palmers and Attorney Larry W. Lawrence, Jr., signed the agreement. Cravens did not, although her name appeared
on the agreement's signature page. The document does not reflect whether Cravens was a party to that lawsuit, or whether
Lawrence represented her.

4. Additionally, the Palmers agreed to release Allied from all claims they may have had, and, in the event of their default of
the rule 11 agreement, they agreed that they would not seek any additional temporary restraining order or temporary
injunction to prevent such a foreclosure sale.

5. Neither Cravens nor the Palmers dispute the debt owed to Allied, Allied's security interest in the properties, or default by
the Palmers. 

6. The Sturges Court concluded there may be tortious interference from a defendant who makes fraudulent statements about
a plaintiff to a third person, who threatens assault on a plaintiff's prospective customer for doing business with plaintiff, or
who is involved in an illegal boycott. Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d 711, 727 (Tex. 2001). However, a
plaintiff could not recover against a defendant whose persuasion of others not to deal with plaintiff was lawful. Id.

7. See Conversion Props., L.L.C. v. Kessler, 994 S.W.2d 810, 813 (Tex. App.-Dallas 1999, writ denied); Peterson v. Black,
980 S.W.2d 818, 821-22 (Tex. App.-San Antonio 1998, no pet.); Bonilla v. Robertson, 918 S.W.2d 17, 23 (Tex.
App.-Corpus Christi 1996, no writ); Biddle v. Nat'l Old Line Ins. Co., 513 S.W.2d 135, 138 (Tex. Civ. App.-Dallas 1974,
writ ref'd n.r.e.).