David H. HOFFMANN, Appellant,

v.

Jeff DANDURAND, Appellee.

No. 05–05–00311–CV.

Court of Appeals of Texas,
Dallas.

Nov. 30, 2005.

D. Kevin McCorkindale, Kasselman & McCorkindale, P.C., Plano, for appellant.

Gordon K. Wright, Cooper & Scully, P.C., Dallas, for appellee.

Before Justices FITZGERALD, LANG–MIERS, and MAZZANT.

## OPINION

Opinion by Justice MAZZANT.

In this interlocutory appeal, David H. Hoffmann ("Hoffmann") appeals an order denying his special appearance in a suit brought by Jeff Dandurand ("Dandurand"). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2005). Hoffmann presents four issues contending that his special appearance should have been granted: (1) the trial court does not have general jurisdiction over him; (2) the trial court does not have specific jurisdiction over him; (3) the exercise of personal jurisdiction over him offends traditional notions of fair play and substantial justice and is inconsistent with the constitutional requirements of due process; and (4) the trial court's findings of fact and conclusions of law are not supported by the record. For the following reasons, we conclude that Hoffmann is not subject to per-

sonal jurisdiction in Texas and reverse the judgment of the trial court.

## Factual and Procedural Background

Dandurand was an employee of DHR International, Inc. ("DHR") for over five years. DHR was an executive search firm based in Chicago, Illinois. Dandurand alleges that in November 1996 he entered into an agreement with DHR to buy rights to purchase stock. This agreement was signed by Hoffmann on behalf of DHR and Dandurand. The terms of this agreement included a repurchase clause that gave Dandurand the right to sell his purchase rights back to DHR. Dandurand alleges that in July of 1997 he exercised his rights under the repurchase clause and agreed upon a repurchase price to be made by DHR in five annual payments. In December of 1998, EPS Solutions, Inc. ("EPS") acquired the assets of DHR, including the right to use its name. EPS also assumed Dandurand's contract. In 2001, EPS sold its executive search firm assets to Hoffmann Investment Company, Inc. ("HIC") including the right to use the DHR name.

On May 28, 2002, Dandurand filed suit against DHR, HIC, Riverwalk International, Inc. ("Riverwalk"), and Hoffmann for breach of contract. Dandurand alleges that he received the first four annual payments that he was owed for the sale of his stock purchase rights, but claims that he never received the fifth and final annual payment that was due. DHR and HIC filed original answers, generally appearing in the lawsuit. Hoffmann and Riverwalk filed special appearances. On September 5, 2002, the special appearances were denied. Hoffmann and Riverwalk[1] then requested findings of fact and conclusions of law. On September 5, 2003, the trial court

---

1. Dandurand conceded that Riverwalk's special appearance was appropriate and the trial court dismissed it from the lawsuit.

issued findings of fact and conclusions of law.

Hoffmann appealed the order to this Court, which reversed the judgment and remanded the case to the trial court for further proceedings consistent with our opinion. *Hoffmann v. Dandurand,* 143 S.W.3d 555 (Tex.App.-Dallas 2004, no writ.). Subsequently, Dandurand and Hoffmann both filed proposed "Amended Findings of Fact and Conclusions of Law" with the trial court. Hoffmann's were "refused and denied." Dandurand's were accepted and signed by the trial court, which once again denied Hoffmann's special appearance. Hoffmann now appeals the decision of the trial court.

### Standard of Review

■ Whether a court has personal jurisdiction over a defendant is a question of law. *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 805–806 (Tex.2002)(citing *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002)). In resolving this question of law, a trial court must frequently resolve questions of fact. *Coleman,* 83 S.W.3d at 806 (citing *BMC Software,* 83 S.W.3d at 794). Appellate courts review the trial court's factual findings for legal and factual sufficiency and review the trial court's legal conclusions de novo. *BMC Software,* 83 S.W.3d at 794; *Hotel Partners v. Craig,* 993 S.W.2d 116, 120–21 (Tex.App.-Dallas 1994, pet. denied). If the trial court enters findings of fact and conclusions of law, the appellant may challenge them on factual sufficiency grounds. *Id.; see also Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 634 (Tex.App.-Dallas 1993, writ denied). When a factual sufficiency challenge is advanced the court must examine all the evidence. *Carone v. Retamco Operating, Inc.,* 138 S.W.3d 1, 10 (Tex. App.-San Antonio 2004, pet. denied); *Leon*

*Ltd. v. Albuquerque Commons Partnership,* 862 S.W.2d 693, 705 (Tex.App.-El Paso 1993, no writ). The court may set aside a finding only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Carone,* 138 S.W.3d at 7. When there is a legal sufficiency challenge, if there is more than a scintilla of evidence to support the questioned finding the no evidence point fails. *BMC Software,* 83 S.W.3d at 794; *see also City of Keller v. Wilson,* 168 S.W.3d 802 (Tex.2005).

### Personal Jurisdiction

■ The Texas long-arm statute permits Texas courts to exercise jurisdiction over a nonresident defendant that does business in Texas. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.041–.045 (Vernon 1997). The long-arm statute defines "doing business" as: (1) contracting by mail or otherwise with a Texas resident with performance either in whole or in part in Texas; (2) commission of a tort in whole or in part in Texas; (3) recruitment of Texas residents directly or through an intermediary located in Texas; or (4) performance of any other act that may constitute doing business. *Id.* The broad language of the long-arm statute permits Texas courts to exercise jurisdiction "as far as the federal constitutional requirements of due process will permit." *BMC Software,* 83 S.W.3d at 795.

■ Personal jurisdiction over nonresident defendants meets the due process requirements of the Constitution when two conditions are met: (1) the defendant has established minimum contacts with the forum state; and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *BMC Software,* 83 S.W.3d at 795 (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316,

66 S.Ct. 154, 90 L.Ed. 95 (1945)). Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either general or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413–414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *BMC Software,* 83 S.W.3d at 795–796. General jurisdiction is present when the defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *BMC Software,* 83 S.W.3d at 796; *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). In contrast, specific jurisdiction is established if the nonresident defendant's alleged liability arises from or is related to activity conducted within the forum. *BMC Software,* 83 S.W.3d at 796.

■ The "touchstone" of jurisdictional due process analysis is "purposeful availment." *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777 (Tex.2005)(citing *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). "[I]t is essential in each case that there be some act by which the defendant 'purposefully avails' itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 785 (quoting *Hanson,* 357 U.S. at 253, 78 S.Ct. 1228). The Texas Supreme Court has recently discussed the requirements of "purposeful availment" outlining three important aspects to be considered. "First, it is only the defendant's contacts with the forum that count: purposeful availment 'ensures that a defendant will not be haled into a jurisdiction solely as a result of . . . the unilateral activity of another party or a third person.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105

S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Second, the acts relied upon must be "purposeful" rather than "random, isolated or fortuitous." *Id.* (quoting *Keeton v. Hustler Magazine Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)). Third, a defendant must seek some benefit, advantage or profit by "availing" itself of the jurisdiction. By invoking the benefit and protections of a forum's laws, a nonresident consents to suit there. *Id.* (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). By contrast, a nonresident may purposefully avoid a jurisdiction by structuring its transactions so as neither to profit from the forum's laws nor be subject to its jurisdiction. *Id.* (citing *Burger King,* 471 U.S. at 473, 105 S.Ct. 2174).

■ In addition to minimum contacts, the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice. *BMC Software,* 83 S.W.3d at 795 (citing *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154). The following factors are considered in making that determination: (1) the burden on the nonresident defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering substantive social policies. *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 559; *Guardian Royal Exchange Assur., Ltd. v. English China Clays,* 815 S.W.2d 223, 231 (Tex. 1991).

■ The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provision of the Texas long-arm statute. *BMC Software,* 83 S.W.3d at 793. A non-

resident defendant challenging personal jurisdiction through a special appearance carries the burden of negating all bases of personal jurisdiction. *Id.; Torregrossa v. Szelc,* 603 S.W.2d 803, 804 (Tex.1980); *Le Meridien Hotels and Resorts v. LaSalle Hotel Operating Partnership,* 141 S.W.3d 870, 878 (Tex.App.-Dallas 2004, no pet.); *Ramirez v. Hariri,* 165 S.W.3d 912, 915 (Tex.App.-Dallas 2005, no pet.). One exception to that rule arises when the claimant asserts the alter ego theory as the basis for personal jurisdiction over the nonresident. *BMC Software,* 83 S.W.3d at 798; *Le Meridien,* 141 S.W.3d at 878; *Carone,* 138 S.W.3d at 10. The claimant must prove that the nonresident is actually the alter ego of the resident corporation. *Le Meridien,* 141 S.W.3d at 878.

### The Alter Ego Theory

Dandurand asserts and the trial court concluded that personal jurisdiction over Hoffmann is proper based on the alter ego theory of disregarding the corporate fiction. Generally, a corporation is a separate legal entity that insulates its owners or shareholders from personal liability. *Schlueter v. Carey,* 112 S.W.3d 164, 169 (Tex.App.-Fort Worth 2003, pet. denied). Alter ego applies when there is such unity between a corporation and an individual that the separateness of the corporation has ceased and holding only the corporation liable would result in an injustice. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 228 (Tex.1990). The types of evidence a court will consider as proof of an alter ego include: (1) the payment of alleged corporate debts with personal checks or other commingling of funds; (2) representations that the individual will financially back the corporation; (3) the diversion of company profits to the individual for his personal use; (4) inadequate capitalization; and (5) other failure to keep corporate and personal assets separate. *Carone,* 138

S.W.3d at 13; *Mancorp,* 802 S.W.2d at 229. Failure to comply with corporate formalities is no longer a factor in considering whether alter ego exists. *See* TEX. BUS. CORP. ACT ANN. art. 2.21(A)(3) (Vernon 2003); *Carone,* 138 S.W.3d at 13. An individual's standing as an officer, director, or majority shareholder of an entity alone is insufficient to support a finding of alter ego. *Goldstein v. Mortenson,* 113 S.W.3d 769, 781 (Tex.App.-Austin 2003, no pet.).

The corporate fiction is disregarded, even though corporate formalities have been observed and individual property kept separately, only when the corporate form has been used as a part of an unfair device to achieve an inequitable result. *Castleberry v. Branscum,* 721 S.W.2d 270, 272 (Tex.1986); *see also* TEX. BUS. CORP. ACT ANN. art. 2.21(A)(2) (Vernon 2003). Some examples of where the corporate form is used to achieve an unequitable result include: (1) where the corporate fiction is used as a means of perpetrating a fraud; (2) where a corporation is organized and operated as a mere tool or business conduit of another corporation; (3) where the corporate fiction is resorted to as a means of evading an existing legal obligation; (4) where the corporate fiction is used to achieve or perpetrate a monopoly; (5) where corporate fiction is used to circumvent a statute; or (6) where the corporate fiction is relied upon as a protection of crime or to justify wrongdoing. *Castleberry,* 721 S.W.2d at 272.

### The Single Business Enterprise Theory

Dandurand asserts and the trial court concluded that personal jurisdiction over Hoffmann is proper based on the single business entity theory of disregarding the corporate fiction. The single business enterprise theory is another equitable doctrine used to disregard the separate

existence of corporations when corporations are not operated as separate entities, but rather integrate their resources to achieve a common business purpose. *Old Republic Ins. Co. v. EX–IM Servs. Corp.,* 920 S.W.2d 393, 395–96 (Tex.App.-Houston [1st Dist.] 1996, no writ). Factors to be considered in determining whether corporations operate as a single business enterprise include, but are not limited to, the following: (1) common employees; (2) common offices; (3) centralized accounting; (4) payment of wages by one corporation to another corporation's employees; (5) common business name; (6) services rendered by the employees of one corporation on behalf of another corporation; (7) undocumented transfers of funds between corporations; and (8) unclear allocation of profits and losses between corporations. *Paramount Petroleum Corp. v. Taylor Rental Center,* 712 S.W.2d 534, 536 (Tex. App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.).

The Texas Supreme Court has not decided whether the theory of single business enterprise is a necessary addition to Texas law. *Southern Union Co. v. City of Edinburg,* 129 S.W.3d 74, 87 (Tex.2003). Several Texas appellate courts have, however, recognized the single business enterprise theory as a method of piercing the corporate veil. *See Nat'l Plan Admin., Inc. v. Nat'l Health Ins. Co.,* 150 S.W.3d 718, 744 (Tex.App.-Austin 2004, pet. pending); *Aluminum Chems. (Bolivia), Inc. v. Bechtel Corp.,* 28 S.W.3d 64, 68 (Tex.App.-Texarkana 2000, no pet.); *Hall v. Timmons,* 987 S.W.2d 248, 253 (Tex.App.-Beaumont 1999, no pet.).

## Findings of Fact

Before we can analyze Hoffmann's first three issues regarding whether the trial court may exercise personal jurisdiction over him, we must first review his fourth issue and ascertain whether the trial court's findings of fact and conclusions of law are supported by the record. Hoffmann contests many of the Amended Findings of Fact made by the trial court. Specifically, he contests Amended Findings of Fact 7, 8, 13, 18, 28, 32, 33, 34, 35, 37, 39, 43, 44, 50, 51, 55 and 56. Thus, we are required to make an examination of all of the evidence. *See Carone,* 138 S.W.3d at 10; *Leon,* 862 S.W.2d at 705.

■ Amended Findings of Fact 7, 8, 33, 34, 35, and 44 contain various assertions that Hoffmann was acting individually, as opposed to on behalf of DHR, when executing the contract with Dandurand. These findings are unsupported by the evidence. The record reflects that a contract was entered into on November 15, 1996, between DHR and Dandurand in which Dandurand acquired the right to purchase common stock in DHR. Hoffmann did not sign the contract "as DHR," but rather "on behalf of DHR." Even Dandurand in his Original Petition states, "Dandurand entered into an agreement with DHR." The contract contained a repurchase clause that gave Dandurand the right to sell his stock purchase rights back to DHR. There is no evidence in the record that any stock was ever transferred. Nor is there evidence in the record that Hoffmann controlled the contract with Dandurand, or that the contract was for his benefit.

Amended Findings of Fact 28, 32, and 39, refer to Hoffmann's alleged contacts with the State of Texas. There is evidence in the record that Hoffmann had contact with the State of Texas in his capacity as an officer of HIC and DHR, which supports Amended Finding of Fact 32. Hoffmann acknowledges making phone calls to Texas and receiving phone calls from Texas. He also acknowledges making a few business trips to Texas as a representative

of DHR. There is no evidence in the record, however, that, Hoffmann discussed the contract with Dandurand while he was in Texas, as asserted in Amended Finding of Fact 39. Further, contrary to Amended Finding 28, the evidence is uncontroverted that Hoffmann spent no more than a total of seven days in Texas.

Amended Findings of Fact 13, 18, 37, 43, 50, and 51 are all conclusions that would bolster Dandurand's argument for disregarding the corporate fiction using the alter ego or single business enterprise theory. However, there is no evidence in the record to substantiate these findings. Specifically, there is no evidence in the record that EPS sold any assets to Hoffmann. The record reflects that EPS sold assets to HIC, or the current DHR, not to Hoffmann individually. The record does not contain evidence that HIC has failed to maintain corporate formalities. Further, there is no evidence that the operations of Hoffmann, HIC, and both the former and current DHR were not separate, or that HIC, and both the former and current DHR, were conduits through which Hoffmann conducted business. Nor is there evidence that Hoffmann and HIC, and the current and former DHR, are a single business enterprise.

After a thorough review of the record in this case, we conclude Amended Findings of Fact 32, 55 and 56 [2] are the only contested findings of fact supported by the evidence. Amended Findings of Fact 7, 8, 13, 18, 28, 33, 34, 35, 37, 39, 43, 44, 50, and 51 are so contrary to the overwhelming weight of the evidence that they are manifestly unjust and wrong. *See Carone*, 138 S.W.3d at 7; *Haught v. Agricultural Production Credit Ass'n*, 39 S.W.3d 252 (Tex.

App.-Tyler 2000, no pet.). Consequently, the conclusions of law which are based on those findings of fact are also incorrect. *Haught*, 39 S.W.3d at 263.

## Conclusions of Law

Hoffmann challenges all of the trial court's conclusions of law. The trial court concluded that: (1) jurisdiction is proper under the alter ego theory of jurisdiction; (2) jurisdiction is proper under the single business enterprise theory of jurisdiction; (3) the Texas long-arm statute authorizes jurisdiction over Hoffmann in this matter; (4) the court's exercise of jurisdiction over Hoffmann is consistent with federal and state due process standards; (5) the exercise of jurisdiction over Hoffmann comports with traditional notions of fair play and substantial justice; (6) the requisite minimum contacts with Texas exist to establish jurisdiction over Hoffmann; (7) Hoffmann purposefully availed himself of the privileges of conducting activities within Texas, thus invoking the benefits and protections of Texas law; (8) Hoffmann's Texas contacts are not random or fortuitous, or attenuated, instead the quality and nature of Hoffmann's contacts establish minimum contacts with Texas such that he could reasonably anticipate being haled into court within Texas; and (9) the court has personal jurisdiction over Hoffmann. We analyze the trial court's conclusions of law de novo.

## Alter Ego Analysis

■ The trial court's first conclusion of law is that jurisdiction is proper over Hoffmann under the alter ego theory of jurisdiction. Dandurand relies on the following statements in the petition to assert that

2. Finding of Fact 55 and 56 refer to Hoffmann's failure to produce documents. Hoffmann affirms that the documents have not been produced because they are not within

his custody or control. Nevertheless, these contested findings of fact are supported by the evidence.

alter ego was alleged, but not negated. Under the section titled "Factual Allegations":

9. David H. Hoffmann is an individual resident of Illinois who, upon information and belief, has done business in the State of Texas through the corporate entities described herein which have constituted the same enterprise as the corporate entities and because he has denuded at least one of the corporate entities that did business in the state of Texas, thereby making himself liable to creditors in Texas, including Mr. Dandurand.

12. Mr. Dandurand never agreed that the liability owed to him by DHR 1 [3] could be transferred to EPS or to any other entity, and he did not agree to absolve DHR 1 of that debt. Hoffmann, as the mover behind the corporations, reaped the benefits of the assets of DHR 1 to the detriment of Mr. Dandurand, one of the creditors of the corporation. Hoffmann was not careful about maintaining the distinction between himself and these companies.

13. Mr. Hoffmann used the corporate form in an effort to avoid personal liability for certain obligations.

Under the section titled "Causes of Action," "Liability of Mr. Hoffmann":

20. Mr. Hoffmann was the principal, if not the only, shareholder of DHR 1 when it was stripped of its assets and allowed to be dissolved. Mr. Hoffmann deliberately stripped DHR 1 of its assets when he allowed it to be acquired by another corporation that he ran, EPS Solutions. Mr. Hoffmann's

actions effectively rendered DHR 1 incapable of paying its debt to Mr. Dandurand, while at the same time enriching himself. Hoffmann effectively denuded DHR 1 and he is therefore liable for the debt owed to Mr. Dandurand.

■ TEX.R. CIV. P. 45(b) states that the plaintiff's cause of action should be "plain and concise". TEX.R. CIV. P. 47(a) requires "a short statement of the cause of action sufficient to give fair notice of the claim involved." Texas follows a fair notice pleading standard, which looks to whether the opposing party can ascertain from the pleadings the nature and basic issues of the controversy and what testimony will be relevant at trial. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex.2000); *Schlueter*, 112 S.W.3d at 168. Where, as here, the defendant is expected to negate all basis of jurisdiction, the jurisdictional basis should be pleaded clearly and concisely. The defendant cannot be expected to negate the alter ego theory of jurisdiction when it is buried in the pleadings. Dandurand has not clearly and concisely pleaded alter ego in this case. However, even though we conclude that the alter ego theory was not properly pleaded, since the trial court determined that jurisdiction was proper under the alter ego theory, we will discuss that conclusion of law.

Dandurand had the burden of proving the theory of alter ego, before the burden shifted to Hoffmann to negate it. *See Torregrossa*, 603 S.W.2d at 804; *Le Meridien*, 141 S.W.3d at 878; *Ramirez*, 165 S.W.3d at 915. Dandurand did not meet his burden of proving the alter ego theory, so the burden never shifted to Hoffmann to negate it. The only evidence Dandurand offers to support the alter ego theory

---

**3.** In the record, DHR, prior to its purchase by EPS, is sometimes referred to as DHR 1.

is that Hoffmann is a majority stockholder, officer and director of DHR and HIC. This is insufficient to support a finding of alter ego. *Goldstein*, 113 S.W.3d at 781. Having thoroughly reviewed the record, we conclude there was no evidence of a failure to observe corporate formalities or a commingling of corporate and personal property. Nor was any evidence in the record to indicate that the corporation was being used for personal purposes, that it was inadequately capitalized, or that Hoffmann had failed to keep corporate and personal assets separate. *Carone*, 138 S.W.3d at 13; *Mancorp*, 802 S.W.2d at 228; *Goldstein*, 113 S.W.3d at 781. Although the evidence may have shown that Hoffmann was an integral participant in the operation and management of the corporations, it does not show such unity between Hoffmann and the entities that the separateness of the corporations ceased to exist. *Carone*, 138 S.W.3d at 15.

The only other occasion when the alter ego analysis is used to disregard the corporate fiction is when fraud is involved. *Castleberry*, 721 S.W.2d at 272. Dandurand makes the allegation in paragraph 20 of the complaint that "Hoffmann effectively denuded DHR 1 and is therefore liable for the debt owed Mr. Dandurand."[4] There is no evidence in the record of denuding of corporate assets. *World Broadcasting System v. Bass*, 160 Tex. 261, 328 S.W.2d 863 (1959). Nor does the record reflect that Hoffmann used the corporations as an unfair device to achieve an unequitable result. *Castleberry*, 721 S.W.2d at 273; *Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571, 575 (Tex.1975). This vague allegation of constructive fraud is not supported by the evidence. Dandurand has not properly

pleaded or proven that Hoffmann is the alter ego of any of the corporations involved in this case.

Finally, it should be noted that the trial court also concluded the corporate fiction could be disregarded and that jurisdiction was proper under the single business enterprise theory. Since we have already determined that there was no evidence contained in the record to support this theory, we need not decide the merits of that theory as it applies to the facts presented. *Haught*, 39 S.W.3d at 263. The record does not support any theory for disregarding the corporate fiction in this case.

### Analysis of General and Specific Personal Jurisdiction

 The remainder of the trial court's conclusions of law are directed at the assertion of general and specific jurisdiction over Hoffman individually. Therefore, we must analyze whether, absent the alter ego theory or any other basis for disregarding the corporate fiction, the trial court has personal jurisdiction over Hoffmann based on the facts presented.

The record reflects that Hoffmann was born in Missouri and has lived in Missouri and Illinois. He has never maintained any place of business in Texas nor had any officers, agents, or employees in Texas. He has never engaged in business with Texas, nor has he committed a tort in Texas. He has been to Texas no more than five times. He has spent no more than seven days total in Texas during his life. He had telephone conversations with Hoffmann in Dallas. Some of the conversations were initiated by Hoffmann, some were initiated by Dandurand.

---

4. We address this allegation of fraud since it is alleged by Dandurand as part his alter ego analysis. It is important to note, however, than alter ego was not properly pleaded in this case.

■ Hoffmann argues that any Texas contacts made by him were not in his individual capacity and therefore may not be used as a basis for the exercise of general jurisdiction based on the "fiduciary shield doctrine." In the absence of fraudulent or tortuous acts, an individual's transacting business within the state solely on behalf of a corporation does not create general jurisdiction over that individual. *See Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Stuart v. Spademan,* 772 F.2d 1185, 1197 (5th Cir.1985); *Siskind v. Villa Foundation for Educ. Inc.,* 642 S.W.2d 434, 438 (Tex.1982); *Tuscano v. Osterberg,* 82 S.W.3d 457, 467–68 (Tex.App.-El Paso 2002, no pet.); *Leon,* 862 S.W.2d at 708. Hoffmann's contacts with the forum in this case were solely in his capacity as an officer and director of Illinois-based corporations. There is no basis for the trial court to exercise general jurisdiction over him.

■ Additionally, for purposes of specific jurisdiction, Hoffmann did not purposefully avail himself of the privilege of conducting activities within the state. *Michiana,* 168 S.W.3d at 785. The record reflects that Hoffmann had very limited contacts with Texas. He entered into a contract on behalf of DHR, an Illinois corporation, with a Texas resident. Simply contracting with a Texas resident alone is not enough. *Burger King,* 471 U.S. at 478, 105 S.Ct. 2174. Additionally, Hoffmann made several phone calls and business trips to Texas, but even those limited contacts did not necessarily arise from the contract in question. Hoffmann's conduct as it is related to the forum was random, isolated and fortuitous. *Michiana,* 168 S.W.3d at 785. There is no evidence in the record that Hoffmann sought benefit, advantage, or profit by availing himself of the benefits and protections of Texas in the enumerated transactions. *Id.* at 785.

Since we have concluded that alter ego was improperly pleaded and the evidence is insufficient to support a finding that Hoffmann was the alter ego of DHR or HIC, in the absence of the alter ego theory, Hoffmann, in his individual capacity, did not have minimum contacts with this state sufficient to confer personal jurisdiction over him. *Leon,* 862 S.W.2d at 708. Finding this, we do not need to discuss whether the exercise of jurisdiction would comport with traditional standards of fair play and substantial justice. *See Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154.

### Conclusion

The judgment of the trial court denying the special appearance of Hoffmann is reversed and we render judgment dismissing Dandurand's claims against Hoffmann for lack of personal jurisdiction.