In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00022-CV


______________________________




KAREN ARSENAULT, INDIVIDUALLY AND

AS NEXT FRIEND OF MICHAEL LOWRANCE

(THEN A MINOR), AND MICHAEL LOWRANCE, Appellant


V.



ORTHOPEDICS SPECIALIST OF TEXARKANA AND


JOHN P. YOUNG, M.D., Appellees



 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 05C1788-202




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Karen Arsenault and Michael Lowrance (collectively, Lowrance) bring this accelerated
appeal from the dismissal, for failure to serve an expert's report, of their healthcare liability (HCL)
claim. See Tex. Civ. Prac. & Rem. Code Ann. §§ 51.014(a)(9), 74.351 (Vernon Supp. 2007). (1) At
issue in this appeal are two of the defendants: Dr. John P. Young (an orthopedist) and Orthopedic
Specialists of Texarkana (OST) (Young's practice). Lowrance appeals, raising one point of error:
that it is error to dismiss a HCL case for failure to serve an expert report when the report was served
on an alter ego codefendant. (2) We need not reach the question of whether service of a HCL expert
report via alter ego is permissible since there is no basis for concluding OST was an alter ego of
Dr. Young.

Factual and Procedural History

 A single attorney originally represented both Young and OST, who filed a joint answer. 
Shortly after Young and OST filed their joint answer, the trial court granted OST's motion to
substitute counsel. Lowrance then timely served the expert report via fax and mail to the substituted
counsel, but not to the original counsel, who still represented Young. After Young filed his motion
to dismiss, Lowrance amended his petition to assert that Young and OST were alter egos and that
each was "d/b/a" the other. 

 The court expressly found that, "It is clear in reviewing the pleadings and related documents
that up until the filing deadline the Plaintiff had treated Dr. Young and OST as separate parties." 
The court granted Young's motion to dismiss for Lowrance's failure to serve an expert report.

Standard of Review

 We review a dismissal pursuant to a challenged HCL expert report for abuse of discretion. 
See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 877 (Tex. 2001) (standard
applied to predecessor statute); Intracare Hosp. N. v. Campbell, 222 S.W.3d 790, 794 (Tex.
App.--Houston [1st Dist.] 2007, no pet.). The test for abuse of discretion is not whether, in the
opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but
whether the court acted without reference to any guiding rules or principles; the mere fact that a trial
court may decide a matter within its discretionary authority differently than an appellate judge does
not demonstrate such an abuse. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238 (Tex.
1985). A court does not have discretion to determine what the law is, which law governs, or how
to apply the law. See Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992). 

Expert Report Requirement

 Lowrance concedes that, in this HCL suit, service of an expert report and curriculum vitae
is mandatory within 120 days. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). The statute
requires that the claimant "shall . . . serve on each party or the party's attorney" the required report. 
Id. As mentioned above, Lowrance timely served OST, but did not separately serve Young with the
report. Should a claimant fail to serve the required report "as to a defendant physician or health care
provider," the statute requires that the trial court shall dismiss the claim with respect to that
defendant. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b). The dismissal is mandatory. See
Thoyakulathu v. Brennan, 192 S.W.3d 849, 853 (Tex. App.--Texarkana 2006, no pet.).

"Alter Ego" or "Single Business Enterprise"

 Lowrance asks us to find that Young was served by virtue of the service on OST since, as
Lowrance asserts, the two are alter egos or a single business enterprise. Presuming, without
deciding, that serving an expert report on an alter ego or single business enterprise codefendant
satisfies the HCL expert report requirement, we have no factual basis for concluding that Young and
OST are alter egos or a single business enterprise. 

 The Texas Supreme Court has set forth when regarding two entities as alter egos is
appropriate: 

 A subsidiary corporation will not be regarded as the alter ego of its parent
merely because of stock ownership, a duplication of some or all of the directors or
officers, or an exercise of the control that stock ownership gives to stockholders. On
the other hand where management and operations are assimilated to the extent that
the subsidiary is simply a name or conduit through which the parent conducts its
business, the corporate fiction may be disregarded to prevent fraud or injustice. 

 

Gentry v. Credit Plan Corp., 528 S.W.2d 571, 573 (Tex. 1975); see also BMC Software Belgium,
N.V. v. Marchand, 83 S.W.3d 789, 799 (Tex. 2002) (requiring evidence of alter ego under Gentry). 
Evidence as proof of an alter ego includes: (1) the payment of alleged corporate debts with personal
checks or other commingling of funds; (2) representations that the individual will financially back
the corporation; (3) the diversion of company profits to the individual for the individual's personal
use; (4) inadequate capitalization; and (5) other failure to keep corporate and personal assets
separate. See Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 229 (Tex. 1990).

 The "single business entity" approach is similar. Factors to be considered in determining
whether entities operate as a single business enterprise include: (1) common employees;
(2) common offices; (3) centralized accounting; (4) payment of wages by one corporation to another
corporation's employees; (5) common business name; (6) services rendered by the employees of one
corporation on behalf of another corporation; (7) undocumented transfers of funds between
corporations; and (8) unclear allocation of profits and losses between corporations. See Hoffman v.
Dandurand, 180 S.W.3d 340, 348 (Tex. App.--Dallas 2005, no pet.).

 No factual basis is presented either in Lowrance's pleading or evidence on any of the alter
ego or single business enterprise features listed above. Lowrance, however, directs us to the
following "evidence" of alter ego or single business enterprise: (1) Lowrance's assertions, in
plaintiffs' amended petition filed after Young's motion to dismiss, that Dr. Young and OST are
"d/b/a" each other, alter egos, and a single business enterprise; (2) Lowrance's statement, in his
original petition, that Young and OST could be served by the same agent; (3) Lowrance's statement,
in his original petition, that Young is "an orthopedic surgeon of Orthopedic Specialists of
Texarkana"; (4) the affidavit of Lowrance's attorney that he served the expert report on OST "d/b/a
John Young" to OST's substituted counsel; and (5) OST's "acknowledgment" of alter ego in its
motion to dismiss. 

 Lowrance's conclusory allegations--that Young and OST are alter egos, a single business
enterprise, "d/b/a" as each other, or "of" the other--in his petition, amended petition, and affidavit
do not suffice. The party seeking to subject the alter ego to the court's jurisdiction or ruling must
plead and present some, usually significant, facts of the close relationship, as per the considerations
above, between the alleged alter ego entities. (3) The burden of pleading and proving alter ego is
Lowrance's; the burden does not shift to Young and OST to negate alter ego until Lowrance has met
his burden. See id. at 350; Wolf v. Summers-Wood, L.P., 214 S.W.3d 783, 791 (Tex. App.--Dallas
2007, no pet.) (in personal jurisdiction posture, general allegation of alter ego, without pleading or
offering evidence of underlying facts, insufficient). In Hoffman, the court found pleadings that
alleged alter ego and single enterprise but which were unsupported by record evidence to be
insufficient. Id. at 350-51; see also Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer, 904 S.W.2d
656, 660 (Tex. 1995) (rejecting, in summary judgment context, conclusory pleadings not stating facts
since, generally, "pleadings are not competent evidence, even if sworn or verified"). 

 Similarly, Lowrance's assertion that Young and OST could be served through the same agent
is insufficient. (4) See, e.g., James v. Gruma Corp., 129 S.W.3d 755 (Tex. App.--Fort Worth 2004,
pet. denied) (finding insufficient evidence of alter ego on evidence of only shared business address
and fact of one entity's acceptance of service for the other). Moreover, we disagree that OST
acknowledged an alter ego status. OST, in its motion to dismiss, asserted that Lowrance's vicarious
liability claim against OST, premised on Young's actions, must be dismissed for failure to serve
Young. We see no reason, and Lowrance provides none, to view this legal argument as an admission
of alter ego.

 Finally, the trial court had before it controverting evidence: an affidavit by OST's attorney
that Lowrance had never corresponded to OST "d/b/a" Young; the fax cover sheet alleged to have
been addressed to OST "d/b/a" Young but which shows no "d/b/a" designation or other
representation that more than one party was being served; OST's attorney's affidavit that OST does
not do business as Young; and OST's answers which state that its correct name is "Orthopedic
Specialists of Texarkana, PLLC." See Tex. Bus. Orgs. Code Ann. § 301.003(6) (Vernon 2007)
(defining professional limited liability company). We cannot say the court abused its discretion in
crediting this evidence in its determination that Lowrance's attempt to characterize Young and OST
as alter egos was inconsistent with its earlier pleadings. Cf. Univ. of Tex. Health Sci. Ctr. v.
Gutierrez, No. 01-07-00455-CV, 2007 WL 2963689, at *5 (Tex. App.--Houston [1st Dist.] Oct. 11,
2007, no pet. h.) (separate HCL claims against separate defendants requires separate service of expert
report).

Conclusion

 There is no pleading or evidence of any factual matter that Young and OST are alter egos of
each other, a single business enterprise, or doing business as the other entity. We need not answer
the question of whether service on an alter ego satisfies the expert report requirement since alter ego
has not been shown. As Lowrance failed to serve an expert report on Young, and dismissal is
mandatory for failure to serve an expert report, the trial court did not abuse its discretion in
dismissing the claim. 

 Accordingly, we affirm the judgment.




 Jack Carter

 Justice


Date Submitted: October 24, 2007

Date Decided: November 14, 2007

1. Because Lowrance's cause of action accrued before September 1, 2005, the prior statute
applies. However, the changes in the current version are not at issue in this appeal and for
simplicity, we cite to the current version of the statute.
2. Though Lowrance asks us to reverse "the motions to dismiss," plural, Lowrance does not
present any authority or argument regarding the basis of the court's dismissal of the direct liability
cause of action against OST--i.e., the inadequacy of the report that was served. For an issue to be
properly before this Court, the issue must be supported by argument and authorities and must contain
appropriate citations to the record. See Tex. R. App. P. 38.1(h); Knoll v. Neblett, 966 S.W.2d 622,
639 (Tex. App.--Houston [14th Dist.] 1998, pet. denied). Thus, any error in the dismissal as to OST
is waived. See Fredonia State Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284 (Tex. 1994).
3. See, e.g., Bland v. Ky. Fried Chicken Corp., 338 F.Supp. 871 (S.D. Tex. 1971) (evidence
included depositions and exhibits addressing stock ownership, director control, purchase
arrangements, and other specific relationships between served franchisor defendant and unserved
franchisee); Gentry, 528 S.W.2d at 573-75 (evidence detailed stock and note structuring; office,
agent, officer, and director overlap; business and employee structure; tax returns; balance sheets; and
corporate minutes); Boyo v. Boyo, 196 S.W.3d 409, 420-21 (Tex. App.--Beaumont 2006, no pet.)
(court looked at witness testimony, bank records, and tax records, among other evidence). 
4. Even if the two shared an agent, Lowrance actually served Young and OST separately. 
Lowrance served the pre-suit notice and citation on Young in Birmingham, Alabama, and served
OST in Texarkana; Lowrance served his amended petition (after the allegation of alter ego)
separately on Young and OST, through their separate attorneys, as required by the rules. See Tex.
R. Civ. P. 8. 


en="false"
 UnhideWhenUsed="false" Name="Colorful Grid Accent 6"/>
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00117-CR

                                                ______________________________

 

 

                            TIMOTHY ANDREW HORNSBY,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                      On Appeal from the Fourth
Judicial District Court

                                                              Rusk County, Texas

                                                         Trial Court
No. CR09-271

 

                                                       
                                           

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

            Timothy
Andrew Hornsby appeals his conviction for possession of a controlled substance,
methamphetamine, in an amount of four grams or more but less than 200
grams.  Hornsby signed a stipulation of
the evidence, a waiver of his right to a jury trial, and written
admonishments.  Hornsby pled guilty
before the court without a negotiated plea agreement.[1]  The trial court found Hornsby guilty and
sentenced him to ten years imprisonment. 
Hornsbys issue on appeal is a request that we reform the judgment to be
consistent with the trial courts oral pronouncement.  The State filed a letter with this Court
declining to file a brief and commenting that the State did not oppose an order
that the defendant receive drug treatment.  


            At the
sentencing hearing, the following colloquy occurred:

 

            [Defense
Counsel]:  Now, you have a lot of health
problems.

 

            [Hornsby]:  Yes, sir.

 

                        . . . .

 

            [Hornsby]:  I have COPD real bad.  You know, I have a hard time breathing.  Ill have to take breathing treatments
several days.  I have a bad back, a bad
left knee, and bad right ankle.

 

            [Defense
Counsel]:  Are you on disability?

 

            [Hornsby]:  Yes, sir.

            [Defense
Counsel]:  And you were selling drugs out
of your house?  

 

            [Hornsby]:  Yes, sir.

 

            [Defense
Counsel]:  Why were you doing that?

 

            [Hornsby]:  To help supplement my income and all.

 

The trial court pronounced sentence as follows:

 

            THE COURT:  . . . Timothy Andrew Hornsby, defendant in
Cause Number CR2009-271, the Court having found you guilty of the offense of
possession of a controlled substance, a second degree felony, which the Court
finds occurred on April 7, 2009, the Court having found you guilty of the same
on that date in Rusk County, Texas, as alleged in the indictment, hereby
assesses your sentence at ten years confinement in the Institutional Division
of the Texas Department of Criminal Justice with credit for time served.  And I will order, if possible, because of any
health problems that he be sentenced to the - - its not SAFPF - - what is
it?  Medical Wing?

 

            .
. . .

 

            THE COURT:             Ill find that he has health problems that significantly
contribute[d] to the commission of the offense and order him to the health care
wing, if possible.

 

The trial courts written judgment omits any reference to
the health care wing.

 

            A trial
courts pronouncement of sentence is oral, while the judgment, including the
sentence assessed, is merely the written declaration and embodiment of that
oral pronouncement.  Ex parte Madding, 70 S.W.3d 131, 135
(Tex. Crim. App. 2002).  When there is a
conflict between the oral pronouncement of sentence in open court and the
sentence set out in the written judgment, the oral pronouncement controls.  Thompson
v. State, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003).  When the matter has been called to an
appellate courts attention by any source, an appellate court has the authority
to modify a judgment to make the record speak the truth.  French
v. State, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); see Tex. R. App. P. 43.2(b).

            We find no
inconsistency between the trial courts oral and written pronouncement.  We note the trial court stated that Hornsby
should be placed in the health care wing of the Texas Department of Criminal
Justice if possible.  We interpret that
as a recommendation by the trial  judge,
but not an order attempting to require the Department to do so.  There was no mention of drug treatment in
the oral pronouncement.  

            Medical
treatment is provided by the Texas Department of Criminal Justice to inmates as
needed.  It is the purview of the
executive branch of government to determine if medical treatment is required
and whether treatment given is medically necessary.  Tex.
Govt Code Ann. § 501.051(e)
(West 2004); see Hernandez v. State, No. 03-07-00161-CR, 2008 Tex. App. LEXIS 5810
(Tex. App.Austin Aug. 1, 2008, no pet.) (mem. op., not designated for
publication) (boot camp recommendation subject to TDCJ-CID determination of
eligibility for program).  We decline to modify
the judgment as requested.  

             We note that the judgment provides the Statute
for Offense:  418 HSC.  We modify the judgment to reflect that the
statute for the offense is Section 481.115(d) of the Texas Health and Safety
Code.  See Tex. Health & Safety
Code Ann. § 481.115(d) (West 2010); see
also Tex. Health & Safety Code
Ann. § 481.102(6) (West 2010).

            We
modify the judgment as specified above and affirm the judgment as modified.

 

 

 

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date Submitted:          October
21, 2011

Date Decided:             October
27, 2011

 

Do Not Publish 

 

 

 











[1]We
note that the trial courts certification of Hornsbys right to appeal
specifies that Hornsby pled guilty pursuant to a plea bargain, but the trial
court had granted permission to appeal. 
The judgment and the reporters record, however, establish that Hornsby
pled guilty without a negotiated plea agreement.  During the plea hearing, Hornsby replied, Yes,
sir, when the trial court inquired, Do you understand, and it is my
understanding, that theres no plea bargain agreement in place; is that
correct?  There is no evidence in the record
that the State agreed to reduce the charges in exchange for Hornsbys plea of
guilty.