NUMBER 13-06-698-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 

 

REGINALD BRACK, Appellant,


v.
 


ISLAND PARK ESTATES, LLC., BLUE

WATER MARINA, LLC., KEVIN B. DEAN, 

AND EMILE L. CLAVET, Appellees.

 
On appeal from County Court at Law No. 3 of Nueces County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Garza and Vela


Memorandum Opinion by Justice Vela




 In this interlocutory appeal, Reginald Brack ("Brack") complains that the trial court
erred in denying his special appearance on the basis of both general and specific
jurisdiction. We affirm. 

 Brack is a resident of New York. On October 4, 2004, he, along with Texas resident
Kevin Dean ("Dean"), and Maine resident Emile Clavet ("Clavet"), formed a Maine limited
liability company known as Blue Water Marina, LLC ("Blue Water"). The company was
formed to purchase a tract of land known as Island Moorings Marina located in Port
Aransas, Texas. On the date of Blue Water's formation, it purchased Island Moorings,
which was subject to foreclosure. Brack was personally present at the Nueces County
courthouse for the purchase. After the sale, Brack and Dean went to the Island Moorings
property and served a "forcible entry and detainer" petition on the former owner. Brack and
Dean then went to a local restaurant to specifically recruit the owner to build a restaurant
on the Island Moorings property. After the restaurant was built, Brack took charge of
running the Island Moorings restaurant, including naming the restaurant, creating a logo,
hiring and firing employees, developing a menu, and installing a computer system and
inventory. 

 On September 2, 2005, Dean formed a Texas limited liability company known as
Island Park Estates, LLC ("Island Park"), in which he was the sole member/manager. On
September 21, 2005, Island Park entered into a loan agreement with Frost National Bank
for the purpose of acquiring property known as Island Park Estates, also in Port Aransas,
to create a single family subdivision. Brack and Dean negotiated a loan from Frost
National Bank for the purchase of Island Park Estates. Brack, Dean and Clavet
guaranteed a $4,080,211.75 note for the purchase of Island Park Estates.

 On December 9, 2005, Brack sold his membership interests in Blue Water to Dean
and Clavet. On December 22, 2005, Blue Water (consisting of the remaining members
Dean and Clavet) entered into a commercial note, executed by Dean, payable to Brack in
the amount of $3,500,000 - the total purchase price of Brack's membership interests in
Blue Water. Blue Water and Brack entered into a pledge agreement, effective that same
day, to secure Blue Water's payment and performance of the commercial note. The
agreement also provided that Blue Water would obtain the release of Brack's personal
guarantee of the $14,080,211.75 loan with Frost National Bank. On December 22, 2005,
Blue Water entered into a commercial note in the amount of $3,500,000 payable to Brack. 
Blue Water subsequently paid Brack $1,750,000 pursuant to the parties' agreement. The
pledge agreement, dated December 22, 2005, was amended and a second commercial
note was created to reflect that Blue Water owed Brack $1,750,000. 

 Later, Blue Water defaulted on the note. Brack demanded payment and
performance on August 8, 2006. On August 22, 2006, Brack filed a "Memorandum of
Rights Relating to Assets" in the official public records of real property in Nueces County
to provide notice of his rights as a secured party under the pledge agreement. Brack,
through his attorney, also sent letters to all purchasers of lots in the Island Park
subdivision, attaching a copy of the memorandum of interest, informing the purchaser:

 I represent Reginald Brack. The Memorandum of Rights (a copy of
which is enclosed with this letter) gives notice to the public that Mr. Brack's
consent must be obtained for Island Park Estates, L.L.C. ("Seller") to transfer
any of its assets. 

 

 The Memorandum of Rights was filed for public record on August 22,
2006. Your deed (a copy of which is enclosed with this letter) was filed on
September 6, 2006, . . . . No request has been made for Mr. Brack to
consent to the transfer of the Property to you. Mr. Brack has not consented
to the transfer of the referenced property. Therefore, the transfer to you was
an unauthorized transaction, and as such is subject to being voided and
rescinded.


 Unless the seller makes a written and signed consent agreement with
Mr. Brack, within twenty days from the letter of this date, I will recommend to
Mr. Brack that a suit be filed against the Seller and you seeking to void and
rescind the transfer of the Property, and seeking to recover any other
appropriate relief to which the plaintiff may be lawfully entitled.


 Mr. Brack regrets the inconvenience, expense and potential loss to
you because of this situation; however, because the Seller has failed to
honor Mr. Brack's legal contractual rights, Mr. Brack has no choice but to
enforce those rights in this manner. 


(emphasis added). 

 One month later, Brack, through another attorney, wrote the purchasers another
letter, essentially stating the same, but further notifying the purchaser that the sale of the
property was "void or voidable" and that Brack had 

 no choice but to seek court intervention to rescind the unauthorized and
improper transfer of the Property from the seller to you. You will certainly be
made a party to the action to rescind the transfer. Therefore, I suggest that
you immediately contact your title insurance company regarding the
Memorandum. I also strongly suggest that you seek legal counsel regarding
your rights.


(emphasis added). 


 On August 28, 2006, Brack filed a lawsuit against Blue Water and Dean in Maine. 
Blue Water and Dean answered the lawsuit on September 16, 2006. Blue Water, Dean
and Clavet filed this suit in Texas on October 16, 2006, for slander of title, tortuous
interference with contracts, and fraud in the inducement.

 Brack filed a special appearance, alleging that he did not have sufficient minimum
contacts in Texas to justify being sued in this state. A hearing on Brack's special
appearance was held on December 20, 2006. The trial court found that it had both general
and specific jurisdiction over Brack and entered findings of fact and conclusions of law
supporting its decision.

I.

Standard of Review


 Whether a trial court has personal jurisdiction over a nonresident defendant is a
question of law. BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex.
2002). However, the trial court must frequently resolve fact questions before deciding the
jurisdictional question. Id. The plaintiff has the initial burden of pleading sufficient
allegations to bring a nonresident defendant within the provisions of the Texas long-arm
statute. Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 574 (Tex. 2007). A
defendant must then negate all bases for personal jurisdiction alleged by the plaintiff. Id. 

 If a trial court issues findings of fact and conclusions of law in ruling on the special
appearance, the appellant may challenge the legal and factual sufficiency of the evidence
to support the findings and the appellate courts may review the legal and factual sufficiency
challenge to support the findings. See BMC Software, 83 S.W.3d at 794. A legal
sufficiency challenge to the findings of fact will not be sustained if there is more than a
scintilla of evidence to support the findings. Id. at 795. In conducting a factual sufficiency
review, appellate courts may set aside a trial court's finding only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong or unjust. See Hoffmann v.
Dandurand, 180 S.W.3d 340, 345 (Tex. App.-Dallas 2005, no pet.).

 We review the trial court's legal conclusions de novo. BMC Software, 83 S.W.3d
at 794. Specifically, we review the trial court's legal conclusions drawn from the facts to
determine their correctness. Id. If the appellate court determines a conclusion of law is
erroneous, but the trial court rendered a proper judgment, the erroneous conclusion of law
will not require reversal. Id. 

II.

Specific Jurisdiction


 By his second issue, Brack argues that the trial court erroneously denied his special
appearance on the basis of specific jurisdiction because the evidence is not sufficient to
support the trial court's findings of fact and conclusions of law. Brack claims that he could
not reasonably anticipate being haled into a Texas court and did not purposefully avail
himself of the benefits of Texas law. We disagree.

 Texas courts may assert in personam jurisdiction over a non resident if (1) the
Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of
jurisdiction is consistent with federal and state due-process guarantees. Moki Mac, 221
S.W.3d at 574; see also Schlobohm v. Schapiro, 784 S.W.2d 355, 356 (Tex. 1990). Our
long-arm statute describes what "[i]n addition to other acts," may constitute doing business
in this state. Moki Mac, 221 S.W.3d at 574.

 The long-arm statute's broad doing-business language allows the statute to reach
as far as the federal constitutional requirements of due process will allow. Moki Mac, 221
S.W.3d at 575; Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815
S.W.2d 223, 226 (Tex. 1991). Thus, the requirements of the Texas long-arm statute are
satisfied if an assertion of jurisdiction accords with federal due-process limitations. Moki
Mac, 221 S.W.3d at 575.

 Federal due-process requirements limit a state's power to assert personal
jurisdiction over a nonresident defendant. Id; see also Guardian Royal, 815 S.W.2d at
226. Personal jurisdiction is proper when the nonresident defendant has established
minimum contacts with the forum state, and the exercise of jurisdiction comports with
"traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326
U.S. 310, 316 (1945). Minimum contacts are sufficient for personal jurisdiction when the
nonresident defendant purposefully avails itself of the privilege of conducting activities
within the forum State, thus invoking the benefits and protections of its laws. Hanson v.
Denckla, 357 U.S. 235, 253 (1958). In Michiana Easy Livin' Country, Inc., v. Holten, the
court reiterated the purposeful availment requirement for the exercise of jurisdiction, by
stating:

 For half a century, the touchstone of jurisdictional due process has
been 'purposeful availment.' Since Hanson v. Denckla, 'it is essential in
each case that there be some act by which the defendant purposefully avails
itself of the privilege of conducting activities within the forum State, thus
invoking the benefits and protections of its laws.'


Michiana Easy Livin' Country, Inc. v. Holten, 168 S.W.3d at 777, 784 (Tex. 2005).

 The supreme court also recently explained, in Michiana, that there are three parts
to a "purposeful availment" inquiry. Id. at 785. First, only the defendant's contacts with the
forum are relevant, not the unilateral activity of another party or third person. Id. at 785. 
Second, the contacts relied upon must be purposeful rather than random, isolated or
fortuitous. Id.; see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1980). Thus,
"[s]ellers who 'reach out beyond one state and create continuing relations and obligations
with citizens of another state' are subject to the jurisdiction of the latter in suits based on
their activities." Michiana, 168 S.W.3d at 785. Finally, the defendant must seek some
benefit, advantage or profit by availing itself of the jurisdiction. Michiana, 168 S.W.3d at
785. 

 When specific jurisdiction is alleged, courts focus the minimum contacts analysis
on the relationship among the defendant, the forum, and the litigation. Guardian Royal,
815 S.W.2d at 228 (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414
(1984); Schlobohm, 784 S.W.2d at 357). Specific jurisdiction is established if the
defendant's alleged liability "aris[es] out of or [is] related to" an activity conducted within the
forum. Helicopteros, 466 U.S. at 414 n.8.

 In Moki Mac, our supreme court noted that the United States Supreme Court has
provided relatively little guidance on the "arise from or relate to" requirement, and noted
that it had not had occasion to examine the strength of the nexus required to establish
specific jurisdiction. Moki Mac, 221 S.W.3d at 579. The court held that Moki Mac had
sufficient purposeful contacts with Texas to satisfy the first prong of jurisdictional due
process, but determined that purposeful availment alone will not support an exercise of
specific jurisdiction:

 Specific jurisdiction analysis has two co-equal components. For specific-jurisdiction purposes, purposeful availment has no jurisdictional relevance
unless the defendant's liability arises from or relates to the forum contacts. 


Id. Our supreme court concluded that for a nonresident defendant's forum contacts to
support an exercise of specific jurisdiction, there must be a substantial connection between
those contacts and the operative facts of the litigation. Id. at 585. 

III.

Jurisdictional Analysis


 We turn now to the issue of whether there is specific jurisdiction in this case. For
a Texas forum to properly exercise specific jurisdiction in this case: (1) Brack must have
had minimum contacts with Texas by purposefully availing himself of the privilege of
conducting activities here; and (2) Brack's liability must have arisen from or be related to
those contacts. See Moki Mac, 221 S.W.3d at 576.

A. Purposeful Availment

 As stated in Michiana, the contacts of persons who "reach out beyond one state and
create continuing relationships and obligations with citizens of another state" are
purposeful rather than fortuitous. Michiana, 168 S.W.3d at 785. Purposeful availment
requires that "a defendant must seek some benefit, advantage, or profit by 'availing' itself
of the jurisdiction." Id. at 785. The notion necessarily implies that the nonresident submit
to suit in the forum, and that the nonresident may avoid being haled into court in a
particular forum by purposefully conducting business so as not to derive benefit or profit
from a forum's laws. Id. 

 Here, Brack created a corporation, albeit in Maine, for the specific purpose of
purchasing a property in Port Aransas, Texas. He personally guaranteed a note with a
Texas bank for the purchase of Island Moorings, and was physically present on the Texas
county courthouse steps when the purchase was made. He personally delivered a "forcible
entry and detainer" document to the previous owner of the foreclosed property, and was
intricately involved in developing, designing, and managing a restaurant for the property. 
His conduct included hiring and firing of employees, developing a logo and menu, and
organizing the operating procedures of the restaurant. He planned and made all
arrangements for the opening of the Island Moorings Marina. Moreover, and crucial to the
specific jurisdiction requirement underlying this particular action, he personally guaranteed
a note for over four million dollars for a Texas company, for the purpose of acquiring Texas
property. Despite the fact that he ultimately sold his shares, he maintained an interest in
the Texas company. He also sent two letters to purchasers of the Island Park lots,
maintaining that he had an interest in the Texas properties, and, he threatened these
Texas property purchasers with litigation if his demands were not met. Certainly, Brack
reached out beyond one state and created continuing relationships and obligations with
citizens from another state, acts which were purposeful and not merely fortuitous. By
taking these actions, Brack could reasonably anticipate being haled into court and
purposefully availed himself of Texas law.

B. Relatedness Requirement

 The "arise from or relate to" requirement lies at the heart of a specific jurisdiction by
defining the required nexus between the nonresident defendant, the litigation, and the
forum. Moki Mac, 221 S.W.3d at 579. In Moki Mac, the supreme court held that for a
nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there
must be a substantial connection between those contacts and the operative facts of the
litigation. Id. at 585. In Moki Mac, the relationship between Moki Mac's contacts with
Texas and the operative facts of the litigation--the guides' conduct on the rafting trip and
whether they exercised reasonable care in supervising the child--were too attenuated to
satisfy specific jurisdiction. Id. at 585, 588. The operative facts, in Moki Mac, concerned
the guides' conduct on the hiking trip and whether they exercised reasonable care in
supervising the decedent. Id. at 585. The alleged misrepresentation in the brochures was
not the subject of the case. Id. 

 Here, in contrast, Brack purposefully came to Texas to do business and did
business in Texas. See Tex. Civ. Prac. & Rem. Code Ann. §17.042 (Vernon 1997). He
purchased property in Texas and entered into business relationships for the purpose of
buying property in Texas. Brack suggests in his correspondence to the potential buyers 
that he had an interest in the Texas property they were attempting to purchase and that
he would be forced to file suit against them to void the sale or transfer of any property. 
Brack's conduct suggests that he availed himself of the privileges of doing business in
Texas and that he would utilize the court system, if necessary. The evidence supports the
trial court's determination that Brack's actions invoked the benefits and protections of
Texas law. Likewise, his liability, if any, relates to his contacts with Texas. We believe that
the minimum contacts prong of personal jurisdiction has been satisfied. 

C. Fair Play and Substantial Justice

 Having found that Brack purposefully established minimum contacts with Texas, we
must consider whether the exercise of personal jurisdiction over him comports with
traditional notions of fair play and substantial justice. Guardian Royal Exch., 815 S.W.2d
at 231. The following factors are considered: (1) the burden on the defendant; (2) the
interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining
convenient and effective relief; (4) the interstate judicial system's interest in obtaining the
most efficient resolution of controversies; and (5) the shared interest of the several states
in furthering substantive social policies. Id. Only in rare cases will the exercise of
jurisdiction not comport with fair play and substantial justice when the nonresident has
established minimum contacts with the forum state. Id. 

 Appellant urges that because Brack filed suit in Maine and thereafter the appellees
filed a similar suit against him in Texas, traditional notions of fair play and substantial
justice are affected. The case law is clear that if we determine that the nonresident has
established minimum contacts only in rare cases will the exercise of jurisdiction fail to
comport with fair play and substantial justice. We do not see how maintaining jurisdiction
offends traditional notions of fair play and substantial justice when Brack clearly availed
himself of Texas business opportunities, property and its laws. Because we find that the
trial court had specific jurisdiction over Brack, his second issue is overruled. We do not
address appellant's general jurisdiction argument. Tex. R. App. P. 47.1.

IV.

Conclusion


 The judgment of the trial court is affirmed. 


 


 ROSE VELA

 Justice


Memorandum Opinion delivered and 

filed this 29th day of November, 2007.