**AFFIRMED and Opinion Filed October 9, 2020**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00318-CV**

**B.G.C., Appellant**
**V.**
**M.Y.R., Appellee**

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-05292-2018**

## MEMORANDUM OPINION

Before Justices Molberg, Carlyle, and Browning
Opinion by Justice Browning

In 2013, appellant BGC (an Oregon resident)[1] and appellee MYR (a Texas resident) began a dating relationship. The relationship abruptly ended in 2017. During the relationship, MYR sent intimate photographs of herself to BGC that she intended to remain private. Subsequently, MYR discovered BGC's family viewed the photographs, and BGC secretly took other intimate photos of her during their time together.

---

[1] Although MYR's original and amended petitions stated BGC lived in Washington, he testified during a deposition that he resides in Oregon.

MYR brought the underlying lawsuit against BGC for invasion of privacy, aiding and abetting the invasion of privacy, violating Texas Civil Practice and Remedies Code sections 98B.002 and 143.001, and intentional infliction of emotional distress. BGC filed a special appearance challenging personal jurisdiction. After a hearing, the trial court denied BGC's special appearance.[2]

On appeal, BGC argues the trial court erred by denying his special appearance because he did not have minimum contacts with Texas, and the exercise of personal jurisdiction offends the traditional notions of fair play and substantial justice. We disagree. For the reasons discussed below, we affirm the trial court's order denying BGC's special appearance.[3]

## Background

We begin by acknowledging that the pleadings and evidence in this case involve facts of a sensitive nature to those involved, some of which are not relevant to our jurisdictional analysis. We include only the relevant facts necessary to determine whether BGC's contacts with Texas support specific jurisdiction over his person. *See* TEX. R. APP. P. 47.1.

---

[2] The original lawsuit also included defendants ABC and KRC, appellant's adult daughters who both saw one photograph of MYR and allegedly shared it with others. ABC is a resident of Washington, and KRC is a resident of Virginia. The trial court granted their special appearances and dismissed them from the suit. They are not before the Court on appeal.

[3] Although BGC challenged both general and specific jurisdiction in the trial court, the parties agree only specific jurisdiction is at issue on appeal. We limit our analysis accordingly. TEX. R. APP. P. 47.1.

BGC is a wealthy man who has repeatedly traveled to Texas through the years for various business reasons and for amorous meetings with MYR. The two engaged in a long-distance relationship for approximately three years. MYR believed the relationship was monogamous, and they often discussed marriage. She described the relationship as a "mature, private, long-distance, intimate relationship."

When BGC visited MYR in Texas, he typically flew on his private jet, which he landed, stored, and refueled at Dallas Love Field. He reserved and paid for hotel rooms in Dallas where they met and engaged in intimate activities. When MYR traveled to meet BGC in other locations, BGC paid for her airfare either through her use of a credit card he provided to her or by wiring money into her Texas bank account.

Due to the long-distance nature of the relationship, the two talked on the phone daily. BGC called and texted MYR in Texas hundreds of times during the three-year relationship.

As the relationship progressed, BGC encouraged MYR to send him intimate photos. BGC provided MYR with a phone specifically for the purpose of sending and receiving private, intimate photos. Although BGC did not remember telling MYR he wanted a separate phone for sending and receiving pictures, "I did tell her that I had another phone that I use only as a picture phone, that if she had photos she wanted to send, she could send them to there." MYR alleged BGC repeatedly requested and pressured her to send intimate pictures of herself using the phone. He

claimed he wanted the pictures because he loved her, he missed her, and the photos would "forever be our private secret."

MYR eventually acquiesced "because she was in love with BGC, they lived in different cities, she believed they would be married and she trusted" him. She believed the personal images "would forever be kept private, secure, and viewed only" by BGC as he promised. BGC also sent MYR numerous unsolicited photographs of his genitals with vivid descriptions of sexual acts. He sent the photos to the phone he provided to her.

MYR later discovered, that in addition to the intimate photographs she sent BGC, he secretly took naked photos of her while they stayed in hotel rooms in Texas.

In October 2017, MYR received a "Dear John" letter from BGC ending their relationship. She never saw BGC again.

Two years after the break up, MYR filed suit. Relevant to this appeal, MYR filed suit alleging (1) invasion of privacy, (2) violation of Texas Civil Practice and Remedies Code section 98B.002, and (3) intentional infliction of emotional distress. BGC filed a special appearance. After a hearing, the trial court denied BGC's special appearance. This interlocutory appeal followed.

**Scope of Pleadings and Fair Notice Pleading Standard**

Before considering whether MYR pleaded sufficient facts to bring BGC within the personal jurisdiction of this state, we must determine the scope of the facts

–4–

we may consider and whether her pleadings include the claims upon which her jurisdictional facts rely.

Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). The defendant has no burden to negate a potential basis for personal jurisdiction when the plaintiff failed to plead it. *Id.*; *Stocksy United v. Morris*, No. 01-18-00924-CV, 2019 WL 6904546, at *6 (Tex. App.—Houston [1st Dist.] Dec. 19, 2019, no pet.). However, we have held the plaintiff's original pleading as well as the response to the defendant's special appearance can be considered in determining whether the plaintiff satisfied her burden. *See Invasix, Inc. v. James*, No. 05-19-00494-CV, 2020 WL 897243, at *4 (Tex. App.—Dallas Feb. 25, 2020, no pet.) (mem. op.); *see also Flanagan v. Royal Body Care, Inc.*, 232 S.W.3d 369, 374 (Tex. App.—Dallas 2007, pet. denied) (considering response to special appearance rather than limiting review to jurisdictional allegations in third party petition); *see also Alliance Royalties, LLC v. Boothe*, 329 S.W.3d 117, 120–21 (Tex. App.—Dallas 2010, no pet.).

In BGC's brief, he argues MYR's first amended petition did not plead a single fact supporting her allegation that he invaded her privacy by surreptitiously taking nude photos of her while in hotel rooms in Texas. Rather, MYR first included these additional allegations in an affidavit attached to her response to the special

appearance. Thus, he contends "the failure to mention or include these specific claims related to this surreptitious photography means that the burden never shifted to [him] and thus leaves no issue for the Court to consider on appeal."

BGC recognized our holding in *Invasix* during oral argument and conceded we may consider MYR's response when determining whether MYR satisfied her burden of pleading facts in support of her claims in her first amended petition (the controlling pleading). He argued, however, MYR cannot add *new claims* in a response.

Under our "relatively liberal" fair notice standard, "a petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim." *Kopplow Dev., Inc. v. City of San Antonio*, 399 S.W.3d 532, 536 (Tex. 2013); *see also* TEX. R. CIV. P. 47 (requiring pleadings contain "a short statement of the cause of action sufficient to give fair notice of the claim involved"). The test for determining whether a petition provides fair notice is whether the opposing party can ascertain from the pleading the nature of and basic issues presented by the controversy and what evidence might be relevant. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224–25 (Tex. 2017). The question is "whether the pleadings have provided the opposing party sufficient information to enable that party to prepare a defense or a response." *Id*.; *Kopplow Dev*., 399 S.W.3d at 536.

Under the fair notice pleading standard, we look to the pleader's intent, and a pleading will be found sufficient "even if some element of a cause of action has not been specifically alleged" because "[e]very fact will be supplied that can be reasonably inferred from what is specifically stated." *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982); *see also Aldous v. Bruss*, 405 S.W.3d 847, 857 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("It is not a valid objection to generally complain that the pleading does not set out enough factual details if fair notice of the claim is given."). In the absence of special exceptions, the petition should be construed liberally in favor of the pleader. *Roark*, 633 S.W.2d at 809.

In her first amended petition, MYR alleges BGC invaded her privacy, in part, because she did not provide actual or effective consent for BGC to "maintain the Plaintiff's illegally acquired intimate, private images, data, and private communications." She further alleged, "Despite Plaintiff's reasonable expectation of privacy, defendant's actions, both separately and in combination with each other, circumvented plaintiff's right to privacy . . . ." In the absence of special exceptions, we liberally construe the allegations in favor of MYR and conclude it is sufficient to encompass the alleged secret photos taken by BGC while visiting Texas.

We recognize BGC, as the defendant, is expected to negate all bases of jurisdiction and therefore, the jurisdictional basis should be pleaded clearly and concisely. *See Hoffmann v. Dandurand*, 180 S.W.3d 340, 350 (Tex. App.—Dallas 2005, no pet.). A defendant cannot be expected to negate a theory of jurisdiction

when it is buried in the pleadings. *Id.* (concluding alter ego theory of liability was not clearly and concisely pleaded). However, MYR's invasion of privacy claim was not "buried" in the pleading. Rather, her cause of action was clearly pleaded. She included additional jurisdictional facts in the affidavit attached to her response, to which BGC did not object, to support her burden. She did not add a new claim in her response. Accordingly, we consider whether BGC is subject to specific jurisdiction in Texas in light of MYR's first amended pleading and response.

### Special Appearance Standard of Review and Applicable Law

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018); *see also Golden Peanut Co., LLC v. Give & Go Prepared Foods Corp.*, No. 05-18-00626-CV, 2019 WL 2098473, at *2 (Tex. App.—Dallas May 14, 2019, no pet.) (mem. op.). If, as in this case, the trial court does not issue findings of fact and conclusions of law with its special appearance ruling, we imply all findings of fact necessary to support its ruling that are supported by the evidence. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). When jurisdictional facts are undisputed, whether those facts establish jurisdiction is a question of law. *Old Republic*, 549 S.W.3d at 558.

When the appellate record includes the reporter's and clerk's records, as is the case here, these implied findings are not conclusive and may be challenged for legal and factual sufficiency on appeal. *BMC Software*, 83 S.W.3d at 795. A legal

sufficiency challenge to a finding fails if there is more than a scintilla of evidence to support the finding. *Id*. A factual sufficiency challenge fails unless the trial court's finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Hoffmann*, 180 S.W.3d at 345.

Texas courts may exercise personal jurisdiction over a nonresident defendant if (1) the Texas long-arm statute permits exercising jurisdiction and (2) asserting jurisdiction satisfies constitutional due process guarantees. *Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 70 (Tex. 2016). The Texas long-arm statute reaches "as far as the federal constitutional requirements that due process will allow." *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). Personal jurisdiction over a nonresident defendant satisfies constitutional due process guarantees when (1) the nonresident defendant has established minimum contacts with the forum state and (2) exercising jurisdiction comports with traditional notions of fair play and substantial justice. *See M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017) (citing *Walden v. Fiore*, 571 U.S. 277, 283 (2014)).

Minimum contacts are established when the nonresident defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking its laws' benefits and protections. *Kelly, Inc.*, 301 S.W.3d at 657–58. The purposeful-availment inquiry includes three parts: (1) only the defendant's contacts are relevant; (2) the contacts must be purposeful, not random,

fortuitous, or attenuated; and (3) the defendant must seek some advantage, benefit, or profit by availing himself of the forum. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007).

A nonresident defendant's forum-state contacts may give rise to two types of personal jurisdiction: general and specific. *Id.* Specific jurisdiction, also called case-linked jurisdiction, is established if the defendant's alleged liability arises out of or relates to the defendant's contacts with the forum state. *Id.* at 576. A claim arises from or relates to the forum contacts if there is a "substantial connection between [the] contacts and the operative facts of the litigation." *Id.* at 585. Specific jurisdiction requires us to analyze jurisdictional contacts on a claim-by-claim basis unless all claims arise from the same forum contacts. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150–51 (Tex. 2013).

The Supreme Court has emphasized that the defendant's relationship, not the plaintiff's relationship, with the forum state is the proper focus of the specific jurisdiction analysis. *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 67 (Tex. 2016). In short, specific jurisdiction "does not turn on where a plaintiff happens to be, and does not exist where the defendant's contacts with the forum state are not substantially connected to the alleged operative facts of the case." *Id.* at 70.

### Specific Jurisdiction Analysis

Three of MYR's claims are relevant to this appeal, and we shall discuss the jurisdictional contacts of each in turn.

The elements of a claim for invasion of privacy by intrusion are an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs, which would be highly offensive to a reasonable person of ordinary sensibilities and result in injury because of the intrusion. *See Moricz v. Long*, No. 06-17-00011-CV, 2017 WL 3081512, at *5 (Tex. App.—Texarkana July 20, 2017, no pet.) (mem. op.) (citing *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993)).

MYR alleged BGC solicited her in Texas to provide intimate photos using cell phones, text messages, email, and other electronic media. The "private, intimate images/materials were all created under circumstances in which [MYR] reasonably expected and believed that they were and would always remain private and secure." In her response, she further alleged he secretly took photos of her while the two stayed in a Texas hotel.

The record indicates BGC traveled to Texas to visit MYR approximately a dozen times. During these visits, BGC booked and paid for hotel rooms where they spent several nights together. He secretly took naked photos of her while staying at a Texas hotel.

When BGC was not traveling to see MYR, he provided a credit card for her use in Texas or he wired money to her in Texas to pay for her travel. On many occasions, BGC directly deposited $10,000 into her Texas bank account for her to purchase airfare. When the funds depleted, he replenished her account. MYR estimated she traveled at his request from Texas to wherever he was located

–11–

approximately seventy times over their three-year relationship. These contacts are of such a nature and quality that a substantial connection exists between them and the operative facts of the litigation as they pertain to her invasion of privacy claim.

In addition to those contacts, when BGC was not in Texas, the two talked on the phone daily. MYR estimated BGC called and texted her in Texas hundreds of times during the three-year relationship. We recognize the minimum contacts analysis focuses on "the quality and nature of the defendant's contacts, rather than their number." *Searcy*, 496 S.W3d at 69. The number of phone calls and text messages alone do not support minimum contacts in this case. *See Invasix*, 2020 897243, at *7 (seventy-seven emails and five phone calls to Texas over three years was not dispositive of specific jurisdiction inquiry). However, the allegations that BGC repeatedly called and texted MYR in Texas "for a period of weeks and months" pressuring her to provide naked photographs on a phone he provided her as part of getting to know her, gaining her trust, and ultimately breaking that trust led, in part, to her present claim for invasion of privacy.

In another case with different facts, phone calls and texts messages to the cell phone of a Texas resident in a dating relationship with a non-resident defendant may not be sufficient to consider in the minimum contacts analysis. Given the nature and quality of the phone calls and texts here, however, we will not turn a blind eye to

–12–

BGC's actions. Thus, we conclude consideration of the phone calls and text messages may be considered, though they are not determinative, in our analysis.[4]

BGS's contacts in Texas with MYR were not random and isolated, but instead constituted purposeful, continued contacts in Texas over the course of a three-year relationship. And while he contends he did not seek any benefit from the state, he actively pursued a relationship with a Texas resident, whom he allegedly persuaded to provide intimate photos, and he likewise secretly took photos of her while in Texas. One may speculate about the benefit BGC received from the taking of such photos, but to say he received no benefit from a Texas resident is incredulous.

Considering the evidence in the light most favorable to the trial court's order and indulging every reasonable inference supporting the trial court's implied findings, we conclude the evidence is legally sufficient to support the trial court's implied findings and conclusions that sufficient minimum contacts with Texas exist to subject BGC to the specific, personal jurisdiction of Texas courts regarding MYR's invasion of privacy claim. *See Olympia Capital Assocs.*, 247 S.W.3d at 408 ("A legal sufficiency challenge to a finding of fact fails if there is more than a scintilla of evidence to support the finding.").

---

[4] We acknowledge "changes in technology have made reliance on phone calls obsolete as proof of purposeful availment." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 791 (Tex. 2005). Rather, the important factor is the extent of the defendant's activities, not merely the residence of the victim. *Id*. at 789–90. As explained, we do not rely on the phone calls and text messages alone to uphold the trial court's implied conclusion that BGC purposely availed himself of jurisdiction in Texas.

We now consider the jurisdictional facts as pleaded supporting MYR's intentional infliction of emotional distress claim. To establish intentional infliction of emotional distress, she must establish that (1) BGC acted intentionally or recklessly; (2) his conduct was extreme and outrageous; (3) his actions caused her emotional distress; and (4) the emotional distress was severe. *See Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006). In addition to the facts alleged above in her invasion of privacy claim, which MYR incorporated by reference into her IIED claim, MYR alleged BGC sent unsolicited, graphic photographs of his erect penis to the cell phone he provided her in Texas. These pictures were sent without her request or permission and often contained "his graphic description of what he would prefer to be doing with or to [her] at the moment." Despite asking him to stop sending the illicit photos, he continued. BGC did not deny sending these unsolicited photos and actually testified during the special appearance hearing that he believed he sent a photo of his erect penis to MYR while she was in Texas.

MYR described feelings of humiliation, anxiety, fear, sadness, and severe emotional distress because of BGC's actions. She maintains that she has suffered sleepless nights and nightmares, lost a great deal of weight, and sought professional care for anxiety. She fears her daughters will see the images BGC and his family members have of her.

Again, BGC's contacts directed to a Texas resident were purposeful, not random, fortuitous, or attenuated, and he sought a benefit by availing himself of the

forum. *Moki Mac*, 221 S.W.3d at 575. In reaching this conclusion, we reject BGC's argument that MYR's claims are nothing more than the obsolete "direct a tort" theory of personal jurisdiction. *See, e.g., Michiana*, 168 S.W.3d at 789. Our conclusion is not based on the mere fact that MYR lives in Texas and allegedly suffered harm here.

Rather, BGC became subject to specific jurisdiction in Texas when he allegedly "courted MYR in Texas, sent money to her here, solicited her naked images here, defrauded her with false promises of confidentiality here and sent unsolicited photos of his genitals here, only to ultimately betray her, misuse her images and invade her privacy." BGC aggressively contacted and maintained a steady relationship with a Texas resident ultimately leading to the alleged causes of actions.

BGC's actionable conduct from which MYR's IIED claim arises occurred in Texas. The operative facts of the litigation concern the relationship of the parties, the pictures he secretly took of MYR in Texas hotel rooms, and the unsolicited pictures he sent her while she was in Texas. Thus, his potential liability arises from his conduct in Texas and his actions directed towards a Texas resident. *See, e.g., Moki Mac*, 221 S.W.3d at 585.

The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the decision under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). A reviewing

–15–

court cannot substitute its judgment for that of the trier-of-fact so long as the evidence falls within this zone of reasonable disagreement. *Id*. at 822.

Considering the evidence in the light most favorable to the trial court's order and indulging every reasonable inference supporting the trial court's implied findings, we conclude the evidence is legally sufficient to support the trial court's implied finding and conclusion that sufficient minimum contacts with Texas exist to subject BGC to the specific, personal jurisdiction of Texas's courts regarding MYR's invasion of privacy and intentional infliction of emotional distress claims. *See Olympia Capital Assocs.*, 247 S.W.3d at 408.

Finally, MYR asserted BGC violated Texas Civil Practice and Remedies Code section 98B.002, which provides damages if a person unlawfully discloses or promotes certain intimate visual material. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 98B.002(a). Regardless of the alleged facts supporting jurisdiction, the statute itself confers jurisdiction over a non-resident defendant. Section 98B.006 provides in relevant part, "A court has personal jurisdiction over a defendant in a suit under this chapter if . . . the claimant who is depicted in the intimate visual material resides in this state." *Id*. § 98B.006 (2). Accordingly, BGC is subject to the personal jurisdiction of Texas's courts regarding MYR's section 98B.002 claim.

Having concluded minimum contacts exist, we consider whether the exercise of personal jurisdiction satisfies the traditional notions of fair play and substantial justice. *Moncrief Oil Int'l Inc.*, 414 S.W.3d at 154. This involves considering the

–16–

following factors, when appropriate: (1) burden on the nonresident defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of several states in furthering substantive social policies. *Id*. at 155.

When a nonresident has purposefully established minimum contacts with the forum state, it will be only a rare case when the exercise of jurisdiction over that defendant does not comport with traditional notions of fair play and substantial justice. *Id*. at 154. This is not one of those rare cases.

Subjecting BGC to suit in Texas may impose some burden, but the same can be said of all nonresidents. Distance alone cannot ordinarily defeat jurisdiction. *Id*. at 155. BGC admitted during the special appearance hearing he regularly traveled to Texas on his private jet to conduct business and engage in intimate relations with MYR. He kept his private jet at Dallas Love Field and routinely stayed in Texas hotels. Evidence admitted at the hearing indicates he maintains an interest in a business entity in Texas. We can hardly conclude it imposes a substantial burden on BGC to fly on his private jet to Texas for litigation given the other circumstances in which he has repeatedly visited the state. Further, MYR, a Texas resident, has an interest in obtaining convenient relief in Texas. To the extent the record indicates she visited BGC in his home state, these trips were arranged and funded by BGC; therefore, we do not weigh this factor in his favor. The allegations that BGC

committed torts in Texas against a Texas resident implicate a serious state interest in adjudicating the dispute. *See id.* A state has an interest in protecting its citizens from such behavior. *See, e.g., Cappucitti v. Gulf Indus. Prods., Inc*., 222 S.W.3d 468, 487 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (Texas had substantial interest in protecting citizens from both breach of contract and tortious acts committed by nonresidents). Balancing the factors, the burden on BGC of litigating in a foreign jurisdiction is minimal and outweighed by Texas's interests in adjudicating the dispute.

We overrule BGC's specific-jurisdiction challenge.

## Conclusion

We conclude the Texas long-arm statute permits the exercise of jurisdiction over BGC and the assertion of jurisdiction is consistent with the traditional notions of fair play and substantial justice. The trial court did not err by denying BGC's special appearance. Accordingly, we affirm the trial court's order.


/John G. Browning/
JOHN G. BROWNING
JUSTICE

200318F.P05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

B.G.C., Appellant

No. 05-20-00318-CV     V.

M.Y.R., Appellee

On Appeal from the 429th Judicial District Court, Collin County, Texas Trial Court Cause No. 429-05292-2018.
Opinion delivered by Justice Browning. Justices Molberg and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Maura Young Robinson recover her costs of this appeal from appellant Barton G. Colson.

Judgment entered October 9, 2020.